## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

BRANDON THOMPSON,

     Plaintiff,

v.

                                   CASE NO.:

FACEBOOK, INC.,

     Defendant.

_____/

## **COMPLAINT**

1.     Unwanted "Robocalls" are the #1 consumer complaint in America today.

2.     The people complaining about harassing robocalls is increasing at an alarming rate. In 2015, 2,125,968 complained to the Federal Trade Commission (FTC) and Federal Communications Commission (FCC), in 2016 this number was 3,401,614 2016 and in 2017 it was 4,501,967.[1]

3.     In December of 2019 alone, over 4.6 billion calls were placed nationwide at an average of 147.3 million robocalls a day.[2]

4.     Companies also use robodialers to send hundreds of millions of harassing and unwanted text messages, which are considered to be calls under the Telephone Consumer Protection Act ("TCPA").

5.     Plaintiff, Brandon Thompson, alleges Defendant, Facebook, Inc., texted him more than 155 times in stark violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et*

_____

[1] It is important to recognize these merely reflect the number of individuals that complained to these agencies; the number of people that have been victimized by illegal robocalling abuse could be close to 100,000,000 in the last 3 years

[2] https://robocallindex.com/2019/december

*seq.* ("TCPA").

6.      Facebook, Inc., sent hundreds of unwanted texts to the Plaintiff even after Plaintiff asked for the texts to stop.

7.      "Senator Hollings, the TCPA's sponsor, described these calls as 'the scourge of modern civilization.  They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone out of the wall.' 137 Cong. Rec. 30, 821 (1991). Senator Hollings presumably intended to give telephone subscribers another option: telling the autodialers to simply stop calling." *Osorio v. State Farm Bank*, F.S.B., 746 F. 3d 1242, 1256 (11th Cir. 2014). Despite the penalties put in place over 26 years ago, robocall abuse continues to skyrocket.

8.      Robocalls are very inexpensive to make. As was noted in a Senate hearing on the subject: "With such a cheap and scalable business model, bad actors can blast literally tens of millions of illegal robocalls over the course of a single day at less than 1 cent per minute." *Stopping Fraudulent Robocall Scams: Can More Be Done?: Hearing Before the Subcomm. on Consumer Prot., Prod. Safety, and Ins. of the S. Comm. on Commerce, Sci., and Transp.*, 113 Cong. 113-117 (2013) (statement of Lois Greisman, Assoc. Director, Division of Marketing Practices, Bureau of Consumer Protection, Federal Trade Commission).

9.      The TCPA was enacted to prevent companies like Facebook, Inc., from invading American citizens' privacy and prevent illegal robotexts.

10.      Congress enacted the TCPA to prevent real harm. Congress found that "automated or pre-recorded calls are a nuisance and an invasion of privacy, regardless of the type of call" and decided that "banning" such calls made without consent was "the only effective means of protecting telephone consumers from this nuisance and privacy invasion." Pub. L. No. 102-243,

§§ 2(10-13) (Dec. 20, 1991), codified at 47 U.S.C. § 227; see also *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012) ("The Act bans certain practices invasive of privacy").

11.     According to findings by the FCC—the agency Congress vested with authority to issue regulations implementing the TCPA—such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

## JURISDICTION AND VENUE

12.     Jurisdiction and venue for purposes of this action are appropriate and conferred by 28 U.S.C. §1331.

13.     Violations described in the Complaint occurred while Plaintiff was in Cooper City, Florida.

## FACTUAL ALLEGATIONS

14.     Plaintiff is a natural person and citizen of the State of Florida, residing in Cooper City, Florida.

15.     Plaintiff is the "called party." *See Breslow v. Wells Fargo Bank, N.A.*, 755 F. 3d 1265 (11th Cir. 2014); *Osorio v. State Farm Bank, F.S.B.*, 746 F. 3d 1242 (11th Cir. 2014).

16.     Defendant is a Delaware Corporation with its principal place of business in Menlo Park, California, and conducts business in the State of Florida.

17.     Plaintiff is the regular user and carrier of the cellular telephone number at issue, (954) 913-8965.

18.     Plaintiff was the "called party" during each phone call subject to this lawsuit.

19.    Defendant intentionally harassed and abused Plaintiff on numerous occasions by texting several times during one day, and on back to back days, with such frequency as can reasonably be expected to harass.

20.    Defendant intentionally harassed and abused Plaintiff on numerous occasions by texting several times after 10 p.m. (EST) with such frequency as can reasonably be expected to harass. Plaintiff responded to the texts stating that they've woken him up and he must wake up early in order to get to work on time.

21.    Defendant did not have the "express consent" of the Defendant to call or text his cell phone.

22.    "Express consent" is narrowly construed by the Courts.

23.    It is the Defendant's burden to prove they had "express consent" per the TCPA to call or text the Plaintiff on his cell phone using an "automatic telephone dialing system" (ATDS).

24.    It is the Defendant's burden to prove they had "express consent" per the TCPA to call or text the Plaintiff on his cell phone using an ATDS for each account they were calling on.

25.    Defendant was put on notice Plaintiff did not want the Defendant contacting him on five different occasions.

26.    Defendant was told to stop texting the Plaintiff.

27.    Defendant did not have the express consent of the Plaintiff to call or text him.

28.    Plaintiff expressly revoked any express consent Defendant may have mistakenly believed it had for placement of telephone calls or texts to Plaintiff's aforementioned cellular telephone number by the use of an ATDS.

29.    Defendant made at least one text to (954) 913-8965.

30.    Defendant made at least one text to (954) 913-8965 using an ATDS.

4

31.     Defendant made at least one hundred and fifty (150) texts to (954) 913-8965.

32.     Defendant made at least one hundred and fifty (150) texts to (954) 913-8965 using an ATDS.

33.     Each text the Defendant made to (954) 913-8965 in the last four years was made using an ATDS.

34.     Each text the Defendant made to the Plaintiff's cell phone was done so without the "express permission" of the Plaintiff.

35.     Defendant has texted other people's cell phones without their express consent.

36.     Each text the Defendant made to the Plaintiff was made using an ATDS, which has the capacity to store or produce telephone numbers to be called, without human intervention, using a random or sequential number generator; and to dial such numbers as specified by 47 U.S.C § 227(a)(1).

37.     Plaintiff repeatedly requested the Defendant to stop texting his cell phone, however, the Defendant continued to text him hundreds of times.

38.     Defendant has admitted to texting cell phones using an ATDS after that person asked for the texts to stop.

39.     Plaintiff's notice to the Defendant that he did not want more texts was ignored.

40.     Defendant has made approximately one hundred and fifty five (155) texts to Plaintiff's aforementioned cellular telephone number since in or about June of 2018 which will be established exactly once Defendant turns over their dialer records.

41.     Despite actual knowledge of their wrongdoing, the Defendant continued the campaign of abusive robotexts.

42.     Defendant has been sued in federal court where the allegations include: texting an

individual using an ATDS after the individual asked for the calls to stop.

43.     By effectuating these unlawful phone calls, Defendants have caused Plaintiff the very harm that Congress sought to prevent—namely, a "nuisance and invasion of privacy."

44.     Defendant's aggravating and annoying texts trespassed upon and interfered with Plaintiff's rights and interests in his cellular telephone and cellular telephone line, by intruding upon Plaintiff's seclusion.

45.     Defendant's texts harmed Plaintiff by wasting his time.

46.     Moreover, "wireless customers [like Plaintiff] are charged for incoming calls whether they pay in advance or after the minutes are used." In re: *Rules Implementing the TCPA of 1991*, 23 FCC Rcd 559, 562 (2007).  Defendant's texts harmed Plaintiff by depleting the battery life on his cellular telephone, and by using texts allocated to Plaintiff by his cellular telephone service provider.

47.     Defendant's corporate policy and procedures are structured as to continue to text individuals like the Plaintiff, despite these individuals revoking any consent the Defendant may have mistakenly believed it had.

48.     Defendant's corporate policy and procedures provided no means for the Plaintiff to have his aforementioned cellular number removed from the call list.

49.     Plaintiff expressly revoked any consent Defendant may have mistakenly believed it had for placement of texts to Plaintiff's aforementioned cellular telephone by the use of an ATDS immediately upon Defendant's placement of the texts. Making money while breaking the law is considered an incentive to continue violating the TCPA and other state and federal statutes.

50.     None of Defendant's texts placed to Plaintiff were for "emergency purposes" as specified in 47 U.S.C. §227(b)(1)(A).

6

51.     Defendant violated the TCPA with respect to the Plaintiff.

52.     Defendant willfully or knowingly violated the TCPA with respect to the Plaintiff.

## <u>COUNT I</u>
### (Violation of the TCPA)

53.     Plaintiff incorporates Paragraphs one (1) through fifty-two (52).

54.     Defendant willfully violated the TCPA with respect to the Plaintiff each time they texted the Plaintiff after he revoked his consent to be contacted by them using an ATDS or pre-recorded voice.

55.     Defendant knowingly violated the TCPA with respect to the Plaintiff, especially for each of the auto-dialed texts made to Plaintiff's cellular telephone after Plaintiff revoked his consent to be contacted by them using an ATDS or pre-recorded voice.

56.     Defendant, Facebook, Inc., repeatedly sent non-emergency text messages to the wireless telephone number of Plaintiff using an automatic telephone dialing system or prerecorded or artificial voice without Plaintiff's prior express consent in violation of federal law, including 47 U.S.C § 227(b)(1)(A)(iii).

57.     As a result of Defendant's illegal conduct, Plaintiff suffered actual damages and, under § 227(b)(3)(B), is entitled to, inter alia, a minimum of $500.00 in damages for each such violation of the TCPA.

58.     Plaintiff is also entitled to, and does, seek injunctive relief prohibiting Defendant, Facebook, Inc., from violating the TCPA in the future.

**WHEREFORE**, Plaintiff respectfully demands a trial by jury on all issues so triable and judgment against Defendant for statutory damages, punitive damages, actual damages and any other such relief the court may deem just and proper.

Respectfully submitted,

*/s/William "Billy" Peerce Howard*
William "Billy" Peerce Howard, Esq.
Florida Bar No.: 0103330
Geoffrey E. Parmer, Esquire
Florida Bar No. 0103330
Billy@TheConsumerProtectionFirm.com
THE CONSUMER PROTECTION FIRM, PLLC
4030 Henderson Blvd
Tampa, FL 33609
Telephone: (813) 500-1500
Facsimile: (813) 435-2369
Attorney for Plaintiff